## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **M.B. BARGE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 25-1434** |
| **BRAEMAR SHIPBROKING (USA) INC.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion to dismiss for lack of personal jurisdiction filed by defendant, Braemar Shipbroking (USA) Inc. ("defendant").[1] Defendant alternatively requests a transfer of venue or dismissal of plaintiff M.B. Barge Company's ("plaintiff's") claim based on La. Rev. Stat. § 51:1401, *et seq.* for failure to state a claim upon which relief can be granted.[2] Plaintiff opposes the motion.[3] For the following reasons, the motion is **GRANTED**.

### I.    BACKGROUND

This litigation arises out of a dispute concerning the sale of two vessels, the Gulf Carrier and the Gulf Venture ATB (collectively, the "vessels").[4] Plaintiff, a Florida-based shipbroker,[5] alleges that it agreed with the vessels' owner, John W.

---

[1] R. Doc. No. 6.
[2] *Id.*
[3] R. Doc. No. 7.
[4] R. Doc. No. 1 ¶ 5.
[5] *Id.* ¶ 2, 6.

Stone Oil Distributor LLC ("Stone Oil"),[6] that plaintiff would serve as the broker for the vessels.[7] Stone Oil is a Louisiana-based corporation, and the vessels were both located in Louisiana at the time of the sale.[8]

According to plaintiff's complaint, plaintiff undertook a marketing campaign to facilitate the sale of the vessels.[9] Defendant, a Texas-based shipbroker, contacted plaintiff in January, 2023, inquiring about the vessels on behalf of a New York-based buyer.[10] Plaintiff alleges that during negotiations for the purchase of the vessel, "[d]espite knowing that M.B. Barge represented Stone Oil as broker for the [v]essels," defendant began to communicate directly with Stone Oil about the purchase.[11] Plaintiff further alleges that as the transaction progressed, defendant offered to split the brokerage commission for the sale and purchase of the vessels equally, with plaintiff receiving $206,000 as its half of the brokerage commission.[12]

Plaintiff claims that after the sale of the vessel was completed, it sent an invoice to defendant for the commission and contacted defendant multiple times regarding the $206,000 payment.[13] However, defendant contested the amount owed,

---

[6] *Id.* ¶ 5. Plaintiff specifically asserts that the vessels "were owned directly or indirectly by John W. Stone Oil Distributor or an affiliated company, whether individually or in conjunction with a joint venture." *Id.* Because the specific ownership structure of the vessels is not at issue in this case, this Court will proceed under the assumption that Stone Oil owned the vessels before their sale.

[7] *Id.* ¶ 6.

[8] *Id.* ¶ 4, 5.

[9] *Id.* ¶ 7.

[10] *Id.* ¶ 7, 8.

[11] *Id.* ¶ 12.

[12] *Id.* ¶ 13, 14.

[13] *Id.* ¶ 15–18.

offering plaintiff only $200,000.[14] Since it offered the lower commission, defendant has refused to pay plaintiff any amount relating to the sale of the vessel.[15] Plaintiff then filed suit against defendant in the Eastern District of Louisiana, alleging causes of action for breach of contract, unfair trade practices, intentional interference with business relations, and conversion.[16]

Defendant timely filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3), arguing that the Eastern District of Louisiana lacks personal jurisdiction over defendant and is an improper venue for this lawsuit.[17] In the alternative, defendant moves for a transfer of venue to the Southern District of Texas, in which defendant is located,[18] pursuant to Rule 12(b)(4), or for a dismissal of plaintiff's unfair trade practices claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[19] Defendant argues that it does not have sufficient contacts with the State of Louisiana to be subject to litigation in this Court, and that the dispute does not arise out of any contacts it has made with Louisiana.[20]

## II.    STANDARD OF LAW

The Court considers the jurisdictional attack pursuant to Rule 12(b)(2) before addressing defendants' alternative grounds for dismissal. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In the context of a motion filed pursuant to

---

[14] *Id.* ¶ 18.
[15] *Id.* ¶ 19.
[16] *Id.*
[17] R. Doc. No. 6.
[18] R. Doc. No. 6-1 at 2.
[19] *Id.*
[20] *Id.*

Rule 12(b)(2), a plaintiff must establish a court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits. *See Walk Haydel & Assoc., Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008). When the Court rules on the jurisdictional question without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a *prima facie* case that the Court has jurisdiction over a defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Establishing a *prima facie* case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston*, 523 F.3d at 609. Additionally, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Id.* (citation modified).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due

Process Clause of the Fourteenth Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). As "the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits," the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242–43 (citing *A&L Energy, Inc. v. Pegasus Group,* 791 So.2d 1266, 1270 (La. 2001)). The constitutional requirements for personal jurisdiction may be satisfied by a showing that (1) the defendant has "minimum contacts" with the forum state such that imposing a judgment (2) would not "offend traditional notions of fair play and substantial justice." *Luv N' care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

> Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.

*Luv N' care*, 438 F.3d at 469 (citation modified).

## A. General Jurisdiction

General jurisdiction allows a court to exercise personal jurisdiction over a defendant for a claim against them regardless of whether that claim arises from specific contacts between the defendant and the forum state. *Wilson*, 20 F.3d at 647. The two "paradigmatic" places in which a corporation is typically subject to general

5

jurisdiction are (1) its state of incorporation and (2) the state in which it maintains its principal place of business. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020) (citing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).

It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or the principal place of business." *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). To meet this high threshold, plaintiff must show that defendant maintains such "continuous and systematic" contacts with the forum state such that the corporation can fairly be described as "at home" in the forum state. *Frank*, 947 F.3d at 336 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

## B. Specific Jurisdiction

In contrast to general jurisdiction, specific personal jurisdiction is a claim-specific inquiry, allowing a court to exercise personal jurisdiction over a defendant only for claims that arise out of the defendant's contacts with the forum state. *Wilson*, 20 F.3d at 647. "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each of them . . . the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006).

The Fifth Circuit follows a three-step analysis for specific jurisdiction. First, the Court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state

or purposefully availed itself of the privileges of conducting activities there." *Nuivo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Luv N' care,* 438 F.3d at 470 (quoting *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Nuivo Pignone,* 310 F.3d at 378. The focus of the analysis is the "relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

Third, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that [the court's] exercise of jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 482). "The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there." *Johnston*, 523 F.3d at 615. (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999). However, "it is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Id.* (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). To determine whether the

defendant met its burden to show that the exercise of jurisdiction would be unfair or unreasonable, the Court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care,* 438 F.3d at 473.

## III.    DISCUSSION

### A.    General Jurisdiction

Plaintiff concedes that defendant is a corporation incorporated in the State of Texas with its principal place of business in Texas.[21] Thus, neither of the typical avenues for general jurisdiction apply here, and plaintiff must therefore show that defendant maintains "continuous and systematic" contacts with Louisiana such that defendant can be fairly considered to be "at home" in this forum. *Frank*, 947 F.3d at 337. Plaintiff's complaint falls short of establishing these facts.

Plaintiff contends that in addition to the transaction in dispute in this litigation, defendant facilitated "at least two other" transactions regarding Louisiana-based vessels in 2022.[22] Plaintiff further alleges, in a conclusory way, that "the known communications between the defendant and the vessel owner are likely only a portion of the actual instances of the defendant's purposeful availment of conducting business

---

[21] R. Doc. 1 ¶ 3.
[22] R. Doc. 7 at 11.

in Louisiana."[23] Plaintiff accordingly asks for jurisdictional discovery to learn the extent of defendant's prior business transactions in Louisiana.[24]

Merely conducting some portion of its business in a state is not sufficient to render a corporation subject to general jurisdiction in that forum. *Johnston*, 523 at 611–12. In *Johnston*, the plaintiff alleged that the defendant had sold goods and service contracts to ten different customers in Texas, the defendant's employees periodically traveled to Texas to service equipment, the defendant advertised in a national trade journal that circulated in Texas, and the defendant's employees attended multiple trade conferences in Texas. 523 F.3d at 611. The Fifth Circuit found these contacts too sporadic to "constitute a general presence in the state" that would justify the exercise of general jurisdiction over the defendant. *Id.* at 612.

In the instant litigation, even assuming that defendant was involved in other transactions involving Louisiana-based vessels, these contacts would still fall short of the contacts the Fifth Circuit identified as insufficient to establish general jurisdiction in *Johnson*. Plaintiff has only alleged two prior transactions by defendant involving Louisiana-based vessels, and there is no allegation by plaintiff that defendant's employees have ever visited the State of Louisiana.[25]

Plaintiff's alleged contacts between defendant and Louisiana still fall short of the "continuous and systematic" contacts that would render defendant "at home" in Louisiana and subject it to general jurisdiction in this court. *See Johnston*, 523 F.3d

---

[23] *Id.*
[24] *Id.* at 11–12.
[25] *See* R. Doc. No 1; R. Doc. No. 7.

at 611–12; *Stuart*, 772 F.2d at 1192–94. Moreover, the "*prima-facie*-case requirement does not require the court to credit conclusory allegations," such as the plaintiff's suggestion that "the known communications between the defendant and the vessel owner are likely only a portion of the actual instances of the defendant's purposeful availment of conducting business in Louisiana."[26] *Panda Brandywine*, 253 F.3d at 869.

Jurisdictional discovery is inappropriate when it would not lead to the disclosure of significant material facts. *Monkton*, 768 F.3d at 434; *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). Such is the case before this Court. Because plaintiff's stated allegations do not support the claim that jurisdictional discovery would lead to a showing of "continuous and systematic" contacts that would render defendant "at home" in Louisiana, jurisdictional discovery would be improper in this context. *See Monkton*, 768 F.3d at 434; *Johnston*, 523 F.3d at 611–12.

Plaintiff has failed to present a *prima facie* case that defendant is subject to general jurisdiction in the Eastern District of Louisiana. Accordingly, this Court cannot exercise general jurisdiction over defendant within the limits of the Due Process Clause.

## B.    Specific Jurisdiction

In its opposition, plaintiff argues that because defendant communicated with a Louisiana seller to orchestrate the sale of a vessel to a New York buyer, defendant

---

[26] R. Doc. No. 7 at 11.

has sufficient minimum contacts with Louisiana for the court to exercise specific jurisdiction over defendant.[27] Additionally, plaintiff provides in its opposition a draft sale agreement for the transaction that includes a choice-of-law provision,[28] which requires disputes between parties to the contract to be governed by Louisiana law.[29] Plaintiff argues that this shows defendant purposefully availed itself of Louisiana law and was reasonably on notice that it could be subject to suit in Louisiana.[30]

Even if defendant did sign a contract with a Louisiana choice-of-law provision, "[t]he provision contemplates a choice of law not forum." *Stuart v. Spademan*, 772 F.2d 1185, 1192–94 (5th Cir. 1985) (explaining that a choice-of-law provision does not necessarily indicate that a defendant is reasonably on notice that it could be subject to suit in the forum state). Additionally, the Fifth Circuit has explained that an out-of-state party's negotiations with a seller in the forum state, even if those negotiations result in a contract between the two parties that includes a choice-of-law provision supporting the forum state's law, do not satisfy the requirements for specific jurisdiction. *See id.* ("[a]t best, the choice-of-law provision may be said to represent yet one more of several contacts, which taken in their totality are insufficient to

---

[27] *Id.* at 2–10.

[28] R. Doc. No. 7 Ex. 7 at 10. The choice-of-law provision reads, in full:

> This agreement and the right and obligations of the parties hereunder shall be governed by and construed and interpreted in accordance with the internal laws of the State of Louisiana but without regard to its conflicts of laws principles that might suggest the application of the laws of another jurisdiction.

> *Id.*

[29] R. Doc. No. 7 at 4–5; R. Doc. No. 7 Ex. 7 at 10.

[30] R. Doc. No. 7 at 9.

support personal jurisdiction"); *Moncrief Oil*, 481 F.3d at 312 ("Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction.").

Furthermore, noticeably absent from the draft agreement, is any space for the signature of the *broker* involved in the transaction, i.e., the defendant.[31] Only spaces for the signatures of the buyer and the seller, non-party Stone Oil, are contained in the draft agreement.[32] Plaintiff has therefore provided no indication that defendant would be a party to any contract that includes a Louisiana choice-of-law clause.

To the extent that plaintiff relies on *Conrad Shipyard, LLC v. Franco Marine 1, LLC, et al*, 431 F.Supp.3d 839 (E.D.La. 2020) (Barbier, J.), this Court finds that more applicable Fifth Circuit precedent weighs against plaintiff's arguments. In *Conrad Shipyard*, the defendant initiated negotiations with a Louisiana vessel seller in breach of his fiduciary duty to his employer. *Id.* at 844–46. While the court in *Conrad Shipyard* found that the defendant's contacts were sufficient for the exercise of specific jurisdiction, there are two important distinctions between that case and the one at bar.

First, the defendant in *Conrad Shipyard* had taken actions that he reasonably expected would harm a Louisiana resident, the plaintiff, and thus had a reasonable expectation of being subject to suit in Louisiana. 431 F.Supp.3d at 852. Defendant in this litigation, however, has not taken actions it could reasonably expect to cause harm in Louisiana or to a Louisiana resident. Plaintiff is a citizen of Florida, not

---

[31] R. Doc. No. 7 Ex. 7 at 10.
[32] *Id.*

Louisiana.[33] Even if plaintiff were a Louisiana resident, "foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wein Air*, 195 F.3d at 212.

Second, the defendant in *Conrad Shipyard* had created limited liability companies that were parties to a purchase agreement that included strong Louisiana choice-of-law and choice-of-forum clauses, and the court relied upon that fact in deciding that the defendant was aware of the possibility he could be subject to suit in Louisiana and was subject to the court's jurisdiction. 431 F.Supp.3d at 845, 851–52. Meanwhile, defendant has not been a party to any contract before this Court that includes a Louisiana choice-of-law provision, and the draft agreement provided by plaintiff does not contain a Louisiana choice-of-forum clause.[34]

Considering these distinctions, as well as the similarities between this case and *Johnston*, this Court finds plaintiff's reliance on *Conrad Shipyard* unpersuasive. The draft agreement and the negotiations between defendant and Stone Oil regarding a Louisiana-based vessel, even when considered together, are insufficient to establish that defendant has sufficient "minimum contacts" with the State of Louisiana which would permit this Court to exercise specific jurisdiction.

## IV.    CONCLUSION

For the reasons stated above,

---

[33] R. Doc. No. 1 ¶ 2.
[34] R. Doc. No. 7 Ex. 7.

**IT IS ORDERED** that the motion to dismiss is **GRANTED.**[35] Plaintiff's claims against defendant are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, September 3, 2025.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[35] Because of this Court's opinion with respect to personal jurisdiction, the Court does not reach defendant's venue arguments or whether plaintiff failed to state a claim upon which relief can be granted pursuant to La. Rev. Stat. § 51:1401, *et seq*.

14